UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CUSTOM PAK WEST, LTD.,

        Plaintiff,

    v.

JC PRODUCE, INC., dba JC
PRODUCE, LLC, and JOHN
TEDESCO, PAUL ABESS, SUSAN
LENNANE, BETTE BYOUK, JAMES
LENNANE, KEN CATCHOT, GEORGE
KARAM, each individually,

        Defendants.

        NO. CIV. S-08-2489 LKK/GGH

        O R D E R

/

Plaintiff Custom Pak West, a wholesale seller of produce, has brought suit against defendant JC Produce and its officers under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a-499t. Pending before the court is defendants' motion for summary judgment. For the reasons set forth below, the court grants the motion.

////

////

1

**I. BACKGROUND**

**A. Procedural History**

The court described the statutory and factual background of the case in detail in its February 20, 2009 order. Briefly, PACA requires that a produce dealer, should it become insolvent, pay debts owed to its suppliers first. The dealer's assets are considered held in trust for the suppliers. See, e.g., Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 282 (9th Cir. 1997).

Defendant JC Produce is a produce dealer that became insolvent at the time that it owed debts to several dozen sellers. Many of these sellers are plaintiffs in Taylor Farms California, Inc. et al. v. JC Produce, LLC, Case No. 2:08-cv-02657. Plaintiff Custom Pak West is not a party to that suit, having filed instead this separate action in October 2008. In its complaint, it alleged that it was owed $41,600.80, plus interest at a rate of 18% per annum and attorneys fees and costs. Compl. ¶ 19.

As discussed in the court's February 20, 2009 order, there is a claims procedure established in Taylor Farms that essentially allows all of the sellers owed payment by JC Produce to submit claims to it, after which JC Produce pays the sellers directly from a trust account. If there are disputes, the sellers and JC Produce may submit them to the court for resolution.

Because of its factual relationship to the instant case, the court related Taylor Farms to it. At the time, there was a motion pending in the instant case by plaintiff Custom Pak West, seeking that the court establish a procedure for resolving claims against

defendant's PACA trust. When the court ordered Taylor Farms related to this case, it also ordered the parties to file statements as to whether adoption of the claims procedure that had been ordered in Taylor Farms would resolve plaintiff's motion. Plaintiff responded that the Taylor Farms procedure was defective in several ways and therefore inferior to that proposed in its motion.

The court reviewed both claims procedures and concluded that the procedure that had been ordered in Taylor Farms was superior to that proposed by plaintiff, and thus denied the motion. In its opposition to plaintiff's motion, defendant tendered evidence showing that it had identified that plaintiff was owed $24,812.85 from the PACA trust. Declaration of John Tedesco In Opposition to Plaintiff's Amended Motion for Order Establishing a PACA Claims Procedure, Ex. 1.

**B.  Interest and Attorneys Fees Due on Plaintiff's Claims**

At issue in the pending motion is the proper measure of interest on plaintiff's claim. Defendants have tendered evidence in the form of invoices plaintiff had sent to it for orders. Decl. of John Tedesco in Support of Defs.' Mot. for Summ. J. ("Tedesco Decl.") ¶ 13, Ex. F. At the bottom of each invoice the following is printed:

> Unpaid items beyond 30 days past due subject to 1 ½% per month (18% A.P.R.). . . . Interest will accrue on any past-due balance at the rate of 1/5% per month (18% per annum). Buyer agrees to pay all costs of collection including attorneys' fees and costs as sums owed in connection with this transaction in the event collection action becomes necessary.

Id. Each invoice is dated, lists a shipping date and lists a date

3

that payment is due. Id. On each invoice, the "due" date is ten days after the shipping date. Id.

Plaintiff has tendered some evidence of the attorneys fees and costs incurred in this action. Plaintiff's counsel has submitted a declaration detailing the time spent by his firm, Keaton & Associates, P.C., in this case. Affidavit of Jason Klinowski, Esq., In Support of Plaintiff's Response in Opposition, Ex. A-B. The evidence tendered indicates that the hourly fee sought for the persons providing legal services to plaintiff range from $150 to $325 per hour, which Mr. Klinowski identified as "competitive" in the field of PACA trust litigation. Id. ¶¶ 12-13. He has not identified, however, what staff besides himself billed time on this case nor their qualifications. See id. Mr. Klinowski also declared that costs in the case totaled $432.43. Id. ¶ 16, Ex. A. Finally, he has declared that plaintiffs incurred $3,293.69 in "local counsel time," although plaintiff has not tendered any evidence indicating how this amount was computed nor the basis of its reasonableness. See id. ¶ 16.

## II. STANDARD FOR SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).

4

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co.,

391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; see also First Nat'l Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir. 1998). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Ass'n of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992) (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 1999).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; see also T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings

and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. of Civ. Proc. 56(c); see also In re Citric Acid Litigation, 191 F.3d 1090, 1093 (9th Cir. 1999). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); see also Headwaters Forest Def. v. County of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

Matsushita, 475 U.S. at 587 (citation omitted).

### III. ANALYSIS

Defendants move for summary judgment on several grounds, many of which are undisputed by plaintiff. First, defendants move for summary judgment on the issue of whether plaintiff is a PACA licensed seller, which is dispositive as to whether plaintiff is entitled to any portion of the PACA trust established by defendants. See 7 U.S.C. § 499e(c). Defendants acknowledged in their motion that "[i]f Custom Pak does have a license, then the Court can grant summary judgment for Custom Pak on its PACA Trust Claim. . . ." Defs.' Mot. for Summ. J. at 11. In conjunction with their opposition, plaintiff tendered evidence that it is licensed as a covered seller under PACA. Affidavit of Letty Ayala ("Ayala Aff.") ¶¶ 2-3, Ex. A. Defendant does not dispute that there is adequate evidence of plaintiff's licensure. See Defs.' Reply In Support of Mot. for Summ. J. at 5-6.

Similarly, there is no dispute as to the amount defendant owes plaintiff for unpaid invoices. Plaintiff now agrees that defendants were correct in determining this amount to be $24,812.85. Ayala Aff. ¶ 8.

The only issues in dispute are the proper computation of interest on the $24,812.85 debt and the proper award of attorneys' fees and costs. The court considers each in turn.

**A.  Interest**

Neither party disputes that the language of the invoices is controlling on the question of the amount of interest owed

8

plaintiffs for the unpaid balance. Although plaintiff has asserted a breach of contract cause of action against defendants, it has not indicated in its complaint or any of its briefing what jurisdiction's contract law applies to the agreement reflected in the invoices. There is no choice of law provision included in the invoices. See Tedesco Decl. Ex. F. According to plaintiff's complaint, defendants accepted the goods at issue in California and defendant JC Produce is located in California. Compl. ¶¶ 3, 11. Under general choice of law rules, the location to which the seller has agreed to deliver the chattel at issue determines which jurisdiction's law applies to the dispute, unless there is evidence that another jurisdiction had a more significant relationship to the transaction and the parties. See Restatement (Second) of Conflict of Laws § 191 (1971). Here, the location of delivery was California and there is no evidence tendered that another jurisdiction had more significant relationship to the parties or their sales transactions. Therefore, the court applies California law in interpreting the terms of the agreement between the parties as set forth in the invoices.

Under California law, the plain language of an agreement is controlling, unless it would lead to absurdity, and the court must give effect to every part of the contract. Cal. Civ. Code §§ 1638, 1641. Any uncertainty or ambiguity in the contract is interpreted against the drafter. Id. § 1654.

Here, the invoices provide that "[u]npaid items beyond 30 days past due subject to 1 ½% per month (18% A.P.R.)." Tedesco Decl. Ex.

F. Each invoice also sets forth a "Due" date, which is ten days after the shipping date. See id. Each invoice also lists an "Invoice Date," which appears to vary between three to five days after the shipping date. See id.

Defendants contend that, according to the plain language of the invoice, interest begins accruing thirty days after the listed "due" date, or forty days after the shipping date. This appears correct, as the invoices plainly state that unpaid balances would be subject to interest thirty days after they are due. See Tedesco Decl. Ex. F. The text of the invoices does not support plaintiff's assertion that interest would run from forty days after the invoice date. See Pl's Opp'n to Defs.' Mot. for Summary Judgment at 6. There appears no support for this in the language of the invoices, particularly since there appears to be no relationship between the "Due" date and the invoice date on each invoice. See generally Tedesco Decl. Ex. F. Accordingly, interest on each invoice commences thirty days after the given "Due" date, which is forty days after the given shipping date.

Next, the parties dispute the rate of interest. The invoices state that the interest rate is "1 ½% per month (18% A.P.R.)." Id. Plaintiff argues that this should be interpreted as compounding monthly. In other words, plaintiff asserts, if defendant owed $100, at the end of the month it would have accrued $1.50 in interest. At the end of the second month, it would have accrued 1.5% on $101.50, or $1.52. This would be added to the $101.50, and the total would accrue 1.5% interest at the end of the third month,

10

etc. Under this method, at the end of a year, the hypothetical $100 debt would have accrued $19.57 in interest. This, obviously, exceeds the 18% per annum interest rate stated in the invoices. Consequently, because plaintiff's method of interpreting the interest rate provision would require the court to ignore the provisions for annual interest, that interpretation cannot be enforced. Cal. Civ. Code § 1641. Moreover, to the extent that plaintiff intended for its method of interest computation to be expressed in the invoice, as the drafter plaintiff had the obligation to make that intention plain or suffer the consequence of having the ambiguity construed against it. See id. § 1654. Accordingly, defendants' method of interest computation, which is based on an 18% per annum rate, is proper.

Defendants' motion is therefore granted on the issue of the calculation of interest.

**B. Attorneys' Fees and Costs**

Plaintiff's entitlement to attorneys' fees and costs derives from the language of the invoices, which defendants acknowledge, and which is interpreted in accordance with California law, as explained above. Under California law, attorneys' fees arising out of a breach of contract may be awarded in a reasonable amount, taking into consideration the number of hours spent rendering legal services, the complexity of the litigation, the amount in controversy, the skill required, and the experience of counsel. 11382 Beach Partnership v. Libaw, 70 Cal. App. 4th 212, 220 (1999); Montgomery v. Bio-Med Specialties, Inc., 183 Cal. App. 3d 1292,

1297-98 (1986). These hours are multiplied by a reasonable hourly rate prevailing in the relevant community to determine a lodestar. PLCM Group v. Drexler, 22 Cal. 4th 1084, 1095 (2000).

Here, defendants contend that $4,765.50 represents a reasonable award of attorneys' fees, while plaintiff seeks an award of $12,372.75. The court awards $4,703.00 in fees and $432.43 in costs, for a total award of $5,135.43.

**1.  Reasonable Hourly Rate**

First, plaintiff seeks an award of $3,293.69 for "local counsel time." It has tendered no evidence to explain this amount, including no evidence of the time expended by local counsel, what services local counsel performed, or the experience and skills of local counsel that make their hourly rate reasonable. The court therefore concludes that plaintiff has not demonstrated that an award for this amount is reasonable.

Second, plaintiff's counsel has sought rates for Keaton & Associates attorneys ranging from $150 to $325 per hour. Only Mr. Klinowski has been identified as one of these attorneys, although it is unstated at what rate his time has been billed. Moreover, there is no evidence tendered of his experience or that of any other attorney who has billed time on the case. Therefore, the court has no means of determining what a reasonable hourly rate for their services would be. However, based on the relative lack of complexity of legal issues presented in the case and the minimal motion practice that has occurred in it, the court concludes that
////

12

it did not require an exceptional level of skill to litigate.[1] As such, an hourly rate of $200 is reasonable.

### 2. Reasonable Hours Expended

Defendants contend that the plaintiff seeks an award for an unreasonable number of hours for several reasons. First, it argues that plaintiff should not be awarded fees for 7.70 hours the attorneys spent communicating with one another. This is not persuasive. Where a party has multiple attorneys, some communication among them is obviously necessary and in fact is useful in ensuring efficient, non-duplicative work.

Second, defendants contend that plaintiff should not be award fees at attorneys' rates for factual investigation that does not need an attorney's skill. Although defendants state that 6.5 hours were billed for such services, after reviewing the record, the court only identified 4.9 hours (on October 16, 2008; November 3 and 6, 2008; and December 9, 2008). Klinowski Aff. Ex. 1. It is not reasonable to bill at attorneys' rates the type of basic factual research, such as researching parties' addresses, that does not require legal skill. See, e.g., Melnyk v. Robledo, 64 Cal. App. 3d 618, 623-24 (1976) (court should consider skill required when determining reasonable attorneys' fees). Accordingly, these hours

---

[1] Moreover, the court observes that plaintiff now agrees with the position that defendants have consistently taken, which is that the unpaid balance owed to plaintiff was $24,24,812.85, not the $41,600.80 alleged in the complaint. While the court does not suggest the suit was not brought in good faith, the court cannot help but wonder if the dispute could have been resolved upon a more careful accounting by plaintiff without resorting to litigation.

13

are billed at the firm's stated hourly paralegal rate of $85.

Next, defendants contend that plaintiff should not be awarded fees for legal work on motions that were never filed and claims that were never asserted. The court agrees it is not reasonable to require defendants to pay fees for work on claims or motions that plaintiff chose not to pursue. These include an amended complaint that was never filed, an additional claim that was never asserted, and a motion to disgorge that was never filed. The court has identified a total of 14.9 hours for these activities (on December 18, 2008 and February 5, 17, and 18, 2009). Klinowski Aff. Ex. 1. These cannot be reasonably awarded in the case.

Similarly, on February 26, 2009, plaintiff's counsel billed 0.6 hours for work that appears to have been performed on another case. Klinowski Aff. Ex. 1. This cannot be awarded as reasonable attorneys' fees in this case.

Finally, defendants argue that plaintiff should not be awarded fees for work performed on plaintiff's motion to establish a PACA claims procedure, which the court denied. The court cannot agree. Although plaintiff did not succeed in the motion, it was not meritless and did not appear to have been brought in bad faith. It is not unreasonable, therefore, for plaintiff to be awarded fees for the work related to the preparation of this motion.

In sum, the court awards the following as hours reasonably expended by plaintiff's counsel in this case:

////

////

| Month | Hours billed | Hours Awarded |
|---|---|---|
| October 2008 | 6.3 | 5.3 (+ 1.3 at paralegal rate) |
| November 2008 | 5.5 | 3.4 (+ 2.1 at paralegal rate) |
| December 2008 | 8.2 | 4 (+ 1.5 at paralegal rate) |
| January 2009 | 16.4 | 16.4 |
| February 2009 | 20.4 | 9.6 |
| March 2009 | 18 (estimated) | 18 |

See Klinowski Aff. Ex. 1. Review of the billing records also reflects that, beginning in December 2008, plaintiff was billed only a 27.5% pro rata share of the total hours billed. Id. Applying this, plaintiff is awarded a total of 21.9 attorney hours and 3.8 paralegal hours. At a reasonable hourly rate of $200 for attorneys and $85 for paralegals, this represents a fee award of $4,703.00.

Plaintiff has also tendered evidence that it expended $432.43 in costs, which defendant does not dispute. Accordingly, the total award for plaintiff is $5,135.43.

## IV. CONCLUSION

Defendants' motion for summary judgment is GRANTED in part, as provided herein.

Plaintiff is awarded $24,812.85 pursuant to 7 U.S.C. § 499b(4) (plaintiff's first cause of action) and $5,135.43 in attorneys' fees and costs. Interest is due on the principle at a rate of 18% per annum, as provided herein.

IT IS SO ORDERED.

DATED: April 22, 2009.

_/s/ Lawrence K. Karlton_
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

15